UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ROBERT D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:23-cv-90 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Robert D., on February 28, 2022. For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Robert D., filed an application for Disability Insurance Benefits and Supplemental Security Income on January 1, 2021, alleging a disability onset date of December 17, 2020. (Tr. 15, 232). The Disability Determination Bureau denied Robert D.'s application initially on September 15, 2021, and again upon reconsideration on October 15, 2021. (Tr. 146, 154). Robert D. subsequently filed a timely request for a hearing on October 22, 2021. (Tr. 156-158). A hearing was held via telephone on April 27, 2022, before Administrative Law Judge (ALJ) Genevieve Adamo. (Tr. 32-63). Vocational Expert (VE) Marie Barhydt testified at the hearing. (Tr. 52-62). Following the hearing, the ALJ issued an unfavorable decision on June 21, 2022. (Tr. 15-26). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Robert D. had a continuous 12-month period in which he did not engage in substantial gainful activity. (Tr. 18).

At step two, the ALJ determined that Robert D. had the following severe impairments: cervical degenerative disc disease, chronic pain syndrome, lumbar spondylosis, chronic obstructive pulmonary disease, asthma, bipolar disorder, learning disability in childhood, anxiety disorder, post-traumatic stress disorder, dissociative identity disorder, and attention deficit hyperactivity disorder. (Tr. 18).

At step three, the ALJ concluded that Robert D. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). The ALJ found that no medical evidence reflected diagnostic findings that satisfied any listed impairment. (Tr. 19). The ALJ also concluded that the severity of Robert D.'s mental impairments did not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, 12.11, or 12.15. (Tr. 19).

After consideration of the entire record, the ALJ then assessed Robert D.'s residual functional capacity (RFC) as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant may never climb ladders, ropes, or scaffolds, but may occasionally climb ramps or stairs. The claimant is limited to occasional balancing, stooping, kneeling, crawling, and crouching. The claimant should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, extreme heat, extreme cold, loud or very loud noises, bright flashing lights like strobe lights, and humidity. The claimant should avoid unprotected heights, operating motorized vehicles, and operating dangerous machinery with unprotected moving mechanical parts. The claimant could perform jobs that require simple reading, writing, and math calculations; can understand, remember, and carry out work involving simple instructions and routine, repetitive tasks; cannot perform work requiring a specific

> production rate, such as assembly-line work; can meet production requirements that allow a flexible and goal-oriented pace; can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods; can make only simple work-related decisions; could respond appropriately to predictable, routine changes in the workplace; could tolerate brief and superficial interaction with supervisors, coworkers, and the general public, which is defined as occasional and casual contact with no prolonged conversations, but contact with supervisors still includes what is necessary for general instruction, task completion, or training; and could not perform tandem tasks.

(Tr. 21). The ALJ found that Robert D.'s medically determinable impairment reasonably could be expected to cause some of the alleged symptoms. (Tr. 22). That said, she found that the Robert D.'s statements related to the intensity, persistence, and limiting effects of the symptoms conflicted with the medical evidence and other evidence in the record. (Tr. 22).

At step four, the ALJ found that Robert D. could not perform his past relevant work. (Tr. 24). However, the ALJ found jobs that existed in significant numbers in the national economy that Robert D. could perform, such as a collator operator, merchandise marker, and routing clerk. (Tr. 25). Consequently, the ALJ found that Robert D. had not been under a disability, as defined in the Social Security Act, from December 17, 2020, to the date of the decision. (Tr. 25).

## *Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the

correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); see **Bates**, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). Yet "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel. Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to individuals who can establish a "disability" under the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920.** The ALJ first considers whether the claimant is employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b).** If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; see **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines

whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. Yet if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e).** That said, if the claimant shows that his impairment is so severe that he cannot engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, considering his age, education, job experience, and functional capacity to work, is able to perform other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

      Robert D. has requested that the court remand this matter for additional proceedings. In his appeal, Robert D. makes one argument in favor of remand claiming that the ALJ's credibility determination was unsupported by substantial evidence. Specifically, Robert D. objects to the ALJ's finding that his "alleged level limitation is not consistent with the evidence as a whole, including the lack of spinal surgery, refusal of physical therapy, and lack of recent psychiatric hospitalization." (Tr. 23). According to Robert D., the ALJ made negative inferences about his failure to comply with certain treatments without exploring the reasons why he chose not to do so, warranting remand.

"[A]n ALJ's credibility determinations are generally entitled to deference...." **Ghiselli v. Colvin**, 837 F.3d 771, 778 (7th Cir. 2016). Because the ALJ "is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." **Herron v. Shalala**, 19 F.3d 329, 335 (7th Cir. 1994). Yet for determinations based on "objective factors or fundamental implausibilities, rather than subjective considerations such as the claimant's demeanor," the court has "greater freedom to review." **Ghiselli**, 877 F.3d at 778 (internal quotation marks and citation omitted).

The Seventh Circuit has taken issue with an ALJ discrediting a claimant's testimony solely based on noncompliance with treatment. A claimant's statements about symptoms may be less credible "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms." **SSR 16-3p**, 2017 WL 5180304, at *9. However, "such evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan." **Murphy v. Colvin**, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). As a result, "an ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment." *Id.* (citations omitted).

Good reasons for not following a treatment may include "an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects." **Shauger v. Astrue**, 675 F.3d 690, 696 (7th Cir. 2012) (citations omitted). The Seventh Circuit also has held that mental health concerns may prevent a claimant from following treatment. *See* **Kangail v. Barnhart**, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness in general ... may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.").

6

In assessing Robert D.'s credibility regarding his alleged physical and mental ailments, the ALJ noted that he did not have surgery on his spine and refused physical therapy. (Tr. 22). The ALJ found that although Robert D. had a "history of psychiatric hospitalization" he did not undergo recent psychological treatment and did "not have psychotic symptoms." (Tr. 23). Drawing negative inferences from the facts above and without exploring potential explanations for Robert D.'s actions, the ALJ concluded that his "alleged level limitation is not consistent with the evidence as a whole." (Tr. 23).

The Commissioner contends that the ALJ was not required to inquire further because Robert D. was represented by counsel at the hearing citing *Nicholson v. Astrue*, 341 F. App'x 248, 254 (7th Cir. 2009) ("The degree of the ALJ's responsibility to take the initiative is influenced, if not entirely dictated, by the presence or absence of counsel for the claimant."). However, the language cited by the Commissioner related to the ALJ's generic duty to develop the record, not the ALJ's specific duty to explore if there were good reasons for Robert D.'s noncompliance. SSR 16-3p specifically states that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." **SSR 16-3p**, 2017 WL 5180304, at *9.

Here, the ALJ' failed to explore how Robert D.'s bipolar disorder and dissociative identity disorder might have impacted his decisions about treatment. At the hearing, Robert D. testified that he loses all track of time and "can't remember anything" when his distinct alternative personality takes hold. (Tr. 52). According to Robert D., the periods of dissociation occur around two to three times a week. (Tr. 52). Yet, the ALJ failed to inquire how Robert D.'s dissociative identity disorder affected his decisions regarding treatment. Nor did the ALJ explain

why Robert D.'s failure to pursue certain treatments made him less credible. *See* ***Orienti v. Astrue***, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013) ("ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking [or] receiving medical care."). *See also* ***White v. Comm'r of Soc. Sec.,*** 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."); ***Schlichting v. Astrue****,* 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) ("[F]aulting a person with diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'") (citing cases); ***Sparks v. Barnhart***, 434 F. Supp. 2d 1128, 1135 (N.D. Ala. 2006) ("Courts have long recognized the inherent unfairness of placing emphasis on a claimant's failure to seek psychiatric treatment.") (citing cases). Thus, the ALJ should have asked Robert D. about possible explanations for his lack of treatment before concluding that it undermined his credibility.

## *Conclusion*

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Order.

ENTERED this 5th day of October 2023.

/s/ Andrew P. Rodovich
United States Magistrate Judge